SLOSS–SHEFFIELD STEEL & IRON CO. v. TACONY IRON CO.

(Circuit Court of Appeals, Third Circuit.   May 8, 1912.)

No. 1,602.

SALES (§ 363*)—ACTION FOR BREACH OF CONTRACT—QUESTIONS FOR JURY.

    In an action to recover the price of iron delivered under a contract, in which defendant pleaded a rescission after part performance and that the deliveries thereafter were under a new contract at a reduced price, the evidence in support of such defense *held* sufficient to justify the submission of the issue to the jury.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1064; Dec. Dig. § 363.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

Action at law by the Sloss-Sheffield Steel & Iron Company against the Tacony Iron Company. Judgment for plaintiff for part of its claim, and it brings error. Affirmed.

See, also, 188 Fed. 896, 110 C. C. A. 530.

W. H. Ramsay and C. W. Van Artsdalen, both of Philadelphia, Pa., for plaintiff in error.

Albert B. Weimer, of Philadelphia, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge.   In the court below the Sloss-Sheffield Steel & Iron Company, a corporation of Alabama, herein-

after called the Steel Company, brought suit against the Tacony Iron Company, a corporation of Pennsylvania, hereinafter called the Iron Company, to recover damages for breach of a written contract between them, whereby the Steel Company agreed to sell and deliver, and the Iron Company to buy and receive, 2,000 tons of iron in monthly installments of 500 tons per month during January, February, March, and April, 1910, at $14 per ton. The proofs disclosed that during the month of January the Steel Company shipped but 97 tons; that a dispute then arose by reason of the Steel Company's broker demanding, as a condition of future shipments, a financial statement and an indorsement security not stipulated for in the contract. These being refused by the Iron Company, the broker rescinded the contract, stating that no more iron would be shipped. This notification the Iron Company then accepted, and on the trial claimed it was a rescission, that it was so treated by both parties, and that thereafter shipments had ceased. On April 10th, however, when iron had fallen from $14 to $12 per ton, the Steel Company began to ship again, and not only shipped the 500 tons called for by the contract for April, but 200 tons additional. On learning of these shipments, the Iron Company notified the Steel Company's broker that it would only accept and pay for such shipments at the current market rates. To this arrangement it was alleged the broker agreed.

When suit was brought, the Iron Company filed an affidavit of defense, setting forth, in addition to the above facts, that the Steel Company could not maintain the suit, because the contract in question was made in Pennsylvania, and the Steel Company had not registered as provided by statute. Thereupon the Steel Company, in accordance with the Pennsylvania practice, moved for judgment for want of a sufficient affidavit of defense. On hearing this motion the court held the contract was, so far as the pleadings showed, an Alabama one, and entered judgment for the conceded liability of $12 per ton, being the current market price for the iron delivered. Its action in so doing was affirmed by this court in an opinion reported at 188 Fed. 898, 110 C. C. A. 530. On return of the mandate the case went to trial for the balance of the claim, and resulted in a verdict assessing the Steel Company's damage at $677.27. On entry of judgment thereon the plaintiff sued out this writ, and assigned for error the refusal of the court to give binding instructions to the jury to liquidate its damages and return a verdict based on $14 per ton for all iron accepted.

The correctness of the court's action turns on the question whether it was warranted in submitting the question of rescission to the jury. The facts were that, when the controversy arose as to the plaintiff's demand for a financial statement and an indorsement not provided for by the contract, the only evidence of rescission and acceptance thereof was what occurred between the Iron Company and Dimmick & Co., a firm of brokers who had negotiated this contract for the Steel Company. There being no express proof that such facts were communicated to the Steel Company, and the broker having no authority in the premises, it was contended the contract continued in force, and there was no evidence on which the question of rescission could be

submitted. We cannot accede to such contention. To our minds the facts were such that a jury might well infer that the Steel Company not only knew of the broker rescinding the contract, but that it acted in pursuance and ratification of such notice. It was the plaintiff in the cause, and the jury had the significant fact before it that neither by the broker nor its own officers did the Steel Company prove it had no notice. Moreover, its subsequent actions were such as would naturally result from such knowledge; else why should it suspend monthly deliveries to which it was obligated by contract? Indeed, it is inconceivable that the Steel Company suspended deliveries and took no step in the matter for about three months, save on the theory that it had instructed the broker to demand indorsed security, and when it was unequivocally refused, and the contract rescinded by the broker, such facts were communicated by the broker, and thereafter the Steel Company ceased deliveries. Its subsequent resumption of shipments, when the price of iron fell, was also not without significance. The case was one for the jury.

Finding no error in the court's mode of submission, the judgment is affirmed.